**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| PLANNED PARENTHOOD SOUTHEAST, INC. on behalf of its patients, physicians, and staff; REPRODUCTIVE HEALTH SERVICES, on behalf of its patients, physicians, and staff; JUNE AYERS, RN, KIWANA BROOKS, and SHANEKA DAVIS, <br><br> Plaintiffs, <br><br> v. <br><br> LUTHER STRANGE, in his official capacity as Attorney General of the State of Alabama; ELLEN BROOKS, in her official capacity as District Attorney of Montgomery County, Alabama; BRANDON K. FALLS, in his official capacity as District Attorney of Jefferson County, Alabama; ASHLEY RICH, in her official capacity as District Attorney of Mobile County, Alabama; and DONALD E. WILLIAMSON, MD, in his official capacity as State Health Officer of the State of Alabama, <br><br> Defendants. | CIVIL ACTION <br><br> Case No.: 2:13-CV-405-MHT <br><br><br> **AMENDED COMPLAINT** |

Plaintiffs, by and through their undersigned attorneys, bring this Amended Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following:

**PRELIMINARY STATEMENT**

1.      Plaintiffs, who operate the only licensed facilities in Montgomery, Birmingham, and Mobile where abortions are performed, bring this civil rights action, on behalf of themselves, their patients, physicians, and staff, under the U.S. Constitution and 42 U.S.C. § 1983, to

challenge § 4(c) of Alabama House Bill 57, Reg. Sess. (2013) ("HB 57").[1]  That provision will unconstitutionally restrict the availability of abortion services in Alabama by imposing a medically unnecessary requirement that all physicians who perform abortions have staff privileges at a local hospital ("staff privileges requirement" or "requirement").  Plaintiffs and their physicians cannot comply with the staff privileges requirement, and, unless it is enjoined, will be unable to provide abortions after that requirement goes into effect on July 1, 2013.

2.     By making Plaintiffs' clinic licenses contingent on their physicians obtaining staff privileges at local hospitals, Alabama has unconstitutionally delegated standardless and unreviewable licensing authority to private parties – the hospitals – in violation of Plaintiffs' due process rights under the Fourteenth Amendment.  In violation of the rights of Plaintiffs' patients, moreover, the requirement will shut down three-fifths of the abortion providers in the state, with no health benefit.  The purpose and effect of the requirement, which is wholly unnecessary and unreasonable, is to impose a substantial obstacle in the path of women seeking abortion prior to viability, in violation of their constitutional right to privacy.

3.     If Plaintiffs continue to provide abortions without complying with the staff privileges requirement, they would put their clinic licenses at risk, and if their physicians do so, they would jeopardize their medical licenses.  In addition, any clinic administrator, such as Plaintiffs Ayers, Brooks, and Davis, who "knowingly and willfully permits the facility" to operate without complying with the staff privileges requirement is guilty of a Class C felony and subject to imprisonment.

4.     The staff privileges requirement threatens irreparable injury to Plaintiffs, their physicians, staff, and their patients.  Plaintiffs Reproductive Health Services and Ayers will be

---

[1] A copy of the HB 57 is attached hereto as Exhibit A.

forced to close the clinic and Plaintiff Planned Parenthood Southeast, Inc. will be forced to cut staff, services, and hours.  No remedy is available to them at law.  The requirement, moreover, will threaten the health of Alabama women seeking abortions; and deprive women of their constitutionally protected right to obtain a pre-viability abortion.

5.     Plaintiffs seek declaratory and injunctive relief from those constitutional deprivations.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over Plaintiffs' federal claims under 28 U.S.C. § 1331 and 28 U.S.C. §§ 1343(a)(3)-(4).

7.     Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rules 57 and 65 of the Federal Rules of Civil Procedure.

8.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in this district and the majority of Defendants are located in this district.

## PARTIES

A.     **Plaintiffs**

9.     Plaintiff Planned Parenthood Southeast, Inc. ("PPSE") is a not-for-profit corporation, organized under the laws of Georgia.  PPSE, which operates eight health centers in Alabama, Georgia, and Mississippi, provides comprehensive reproductive health care, including family planning services, testing and treatment for sexually transmitted infections, cancer screening and treatment, pregnancy testing and all options counseling, and medication and surgical abortions.  Through one of its corporate predecessors, PPSE has provided care in Alabama since 1930.  PPSE operates two health centers in Alabama, one in Birmingham and one

in Mobile, and is the only licensed abortion provider in those communities.  In its Alabama health centers, PPSE provides medication abortion up to 9 weeks of pregnancy, as measured from the woman's last menstrual period ("LMP") and surgical abortion through 14 weeks LMP. PPSE sues on its own behalf and on behalf of its patients, physicians, and staff.

10.     Plaintiff Reproductive Health Services ("RHS") is a licensed abortion facility, located in Montgomery, Alabama, that has provided safe and legal abortion services to women from Alabama and neighboring states for more than 35 years.  RHS provides a range of high-quality reproductive health care services, including routine pap smears and well-woman exams; testing for sexually transmitted infections; contraceptive counseling and care, including Depo Provera shots; pregnancy testing and all options counseling; abortion services; and referrals for pre-natal care and/or adoption services.   RHS is the only licensed abortion facility in Montgomery.  RHS sues on its own behalf and on behalf of its patients, physicians, and staff.

11.     Plaintiff June Ayers has been the owner and Administrator of Plaintiff RHS for the past 30 years.

12.     Plaintiff Kiwana Brooks is the Administrator of Plaintiff PPSE's Mobile health center.

13.     Plaintiff Shaneka Davis is the Administrator of Plaintiff PPSE's Birmingham health center.

**B.     <u>Defendants</u>**

14.     Defendant Luther Strange is the Attorney General of Alabama, located at 501 Washington Avenue, Montgomery, Alabama.  The Attorney General may – at "any time he or she deems proper" – "superintend and direct the prosecution of any criminal case in any of the courts of this state," Ala. Code § 36-15-14, and may also "direct any district attorney to aid and

assist in the investigation or prosecution of any case in which the state is interested," Ala. Code § 36-15-15.  As such, Defendant Strange is responsible for enforcement of the staff privileges requirement.  Defendant Strange is sued in his official capacity.

15.    Defendant Ellen Brooks is the District Attorney for Montgomery County, located at 251 South Lawrence Street, Montgomery, Alabama.  District Attorneys have the power to "draw up all indictments and to prosecute all indictable offenses" within their territory.  Ala. Code § 12-17-184(2).  As such, Defendant Brooks is responsible for criminal enforcement of the staff privileges requirement.  Defendant Brooks is sued in her official capacity.

16.    Defendant Brandon K. Falls is the District Attorney for Jefferson County, located at 801 Richard Arrington Jr. Blvd. North, Mel Bailey Criminal Justice Center, Birmingham, Alabama.  District Attorneys have the power to "draw up all indictments and to prosecute all indictable offenses" within their territory.  Ala. Code § 12-17-184(2).  As such, Defendant Falls is responsible for criminal enforcement of the staff privileges requirement.  Defendant Falls is sued in his official capacity.

17.    Defendant Ashley Rich is the District Attorney for Mobile County, located at 205 Government Street, Mobile, Alabama.  District Attorneys have the power to "draw up all indictments and to prosecute all indictable offenses" within their territory.  Ala. Code § 12-17-184(2).  As such, Defendant Rich is responsible for criminal enforcement of the staff privileges requirement.  Defendant Rich is sued in her official capacity.

18.    Defendant Donald E. Williamson, MD, is the State Health Officer at the Alabama State Department of Public Health, located at 201 Monroe Street, Montgomery, Alabama.  Among other things, he is responsible for supervising and directing all activities of the State Department of Public Health, pursuant to Ala. Code § 22-2-2 *et seq.*, including the licensing,

inspecting, and disciplining of abortion or reproductive health care centers, *see* Ala. Code § 22-21-20 *et seq.*; Ala. Admin. Code § 420-5-1-.01 *et seq.*   As such, Defendant Williamson is responsible for enforcing the staff privileges requirement with respect to abortion clinic licensing.  Defendant Williamson is sued in his official capacity.

## FACTUAL ALLEGATIONS

**A.**     **Abortion in Alabama**

19.     Legal abortion is one of the safest procedures in contemporary medical practice. The risk of abortion complications is minimal: nationwide, less than 0.3% of abortion patients experience a complication that requires hospitalization.  Plaintiffs' hospitalization rates are even lower.

20.     Plaintiffs operate three of the five licensed abortion clinics in the state.  (The only other licensed abortion clinics in the state are located in Tuscaloosa and Huntsville.)

21.     Women seek abortions for a variety of reasons, including familial, medical, financial, and personal reasons.  Approximately one in three women in this country will have an abortion by age 45.  Most women having abortions (61%) already have at least one child, and 66% plan to have children when they are older, financially able to provide necessities for them, and/or in a supportive relationship with a partner so their children will have two parents.

22.     Plaintiffs' health centers are licensed as "abortion or reproductive health centers" by the Alabama Department of Public Health ("DPH"), and even before the events giving rise to this lawsuit, were subject to and in compliance with extensive regulations, including but not limited to those relating to patient care, infection control, personnel, physician qualifications, fire evacuation plans, emergency communications, recordkeeping, and physical plant requirements (such as minimum doorway sizes and room sizes, interior finishes and flooring material, and

emergency exits).  *See* Ala. Admin. Code r. 420-5-1-.01 *et seq.*  DPH conducts extensive annual surveys of Plaintiffs' health centers to ensure compliance with the regulations.

23.     As required by those regulations, Plaintiffs also maintain contracts with outside covering physicians with "staff privileges at a hospital within the same standard metropolitan statistical area [as the clinic] that permit him or her to perform dilation and curettage, laparotomy procedures, hysterectomy, and any other procedures necessary to treat abortion-related complications."  Ala. Admin. Code r. 420-5-1-.03(6)(b)(4).  The covering physicians, or a qualified substitute, must be available to provide care 24 hours a day, seven days a week.  *Id.* r. 420-5-1-.03(6)(b).

24.     Even though abortion is extremely safe, particularly at the gestational ages at which Plaintiffs provide abortions, Plaintiffs are prepared to provide high quality care in the rare event of complications.  In fact, most complications related to abortion are safely and appropriately managed in the clinic setting.

25.     In the exceedingly rare event that a patient needs to be transferred via ambulance from an abortion clinic to a hospital, the EMTs will take the patient to the closest hospital, at their discretion.  To ensure continuity of care, Plaintiffs' physicians will communicate with their outside covering physician as well as with the emergency room physician treating the patient.  The ER physician will involve Plaintiffs' covering physician or the on-call physicians at the hospital as is necessary and appropriate.  This is consistent with the standard of care.

26.     Complications from abortion are not only rare, but the few complications that do occur may not present until after a patient has left the clinic.  Plaintiffs provide their patients upon discharge with phone numbers to call if they experience complications or have concerns at any time, day or night, after they have left the clinic.  In most cases, the patients' concerns or

complications can be addressed over the phone, by a qualified health care professional, or through a return visit to the clinic. In the rare instances where additional or after hours care is required, Plaintiffs' staff will refer the patient to a local emergency room, as is also consistent with the standard of care.

27.     Between 40-60% of Plaintiffs' patients (depending on the clinic) come from outside the clinic's local area. In the rare event of a complication that occurs after the patient has left the clinic, the patient will be referred, consistent with the standard of care, to a hospital in her area, rather than a hospital near the clinic, making whether the abortion provider has staff privileges at a hospital close to the clinic completely irrelevant.

28.     There is an increasing divide between inpatient and outpatient medicine in contemporary practice, with inpatient care handled more and more often by physicians who regularly or even exclusively provide care in hospital settings. In the exceedingly rare event of an abortion complication that requires hospitalization, the physician who provides the abortion may not in fact be the appropriate physician to manage her care in the hospital.

29.     Requiring abortion providers to have hospital staff privileges, therefore, does not increase patient safety and is medically unnecessary.

30.     Medical evidence has shown that physicians with specialties other than obstetrics and gynecology, and in particular family medicine, can safely provide abortions.

**B.     The Staff Privileges Requirement and Its Impact**

31.     Despite the lack of medical necessity for an abortion provider to have staff privileges at a local hospital, on April 9, 2013, Defendant Bentley signed HB 57 into law. Section 4(c) of HB 57 requires that every physician who provides abortion "shall have staff privileges at an acute care hospital within the same standard metropolitan statistical area as the

facility is located that permit him or her to perform dilation and curettage, laparotomy procedures, hysterectomy, and any other procedures reasonably necessary to treat abortion-related complications."

32.     HB 57 specifically states that it will become effective on the "first day of the third month following its passage and approval by the Governor."  HB 57, § 20.  Thus, the staff privileges requirement will become effective on July 1, 2013.

33.     Violation of the staff privileges requirement carries significant criminal and civil penalties.  Any clinic "administrator" who "knowingly and willfully permits the facility to be operated in a manner" that violates the requirement is guilty of a Class C felony, punishable by imprisonment of between 1 and 10 years. *Id.* § 12(c); Ala. Code. § 13A-5-6.

34.     Violation of the requirement by Plaintiffs is "grounds for adverse licensure action, up to and including [clinic] license revocation," HB 57 § 14(a), and violation of the requirement by any of their physicians, physician assistants, or nurses would subject those professionals to adverse consequences for their professional licenses.  *Id.* § 14(b).

35.     In addition, Plaintiffs could be subject to civil suits for damages for failure to comply with the requirement by "[a]ny person who can demonstrate personal injury, including physical injury, emotional distress, or mental anguish." *Id.* § 13.

36.     HB 57 was championed by anti-abortion politicians as a means to end abortion in Alabama.

37.     Plaintiffs cannot comply with the staff privileges requirement.  For a variety of reasons that differ depending on the hospital, they cannot obtain local privileges.  Those reasons include: the hospitals' religious opposition to abortion, and various hospital requirements unrelated to the ability of Plaintiffs' physicians to provide safe abortion including, but not

limited to, minimum number of hospital admissions per year (which Plaintiffs' physicians cannot satisfy because the abortion complication rate is so low), requirements that all doctors with privileges reside close enough to the hospital to be available for call (which Plaintiffs cannot satisfy because none of their physicians live nearby, and no local physicians are willing to provide abortions), and requirements at university hospitals that physicians obtain a faculty appointment first.

38.     Also, one of PPSE's physicians is a board-certified family practice physician.  In addition to the reasons stated above, that physician cannot comply with HB 57 because it requires staff privileges to provide certain gynecological procedures that are not within a family practice physician's scope of practice.

39.     If the staff privileges requirement takes effect, all three of Plaintiffs' health centers will stop providing abortions as of July 1, 2013.  This will leave the Birmingham, Montgomery, and Mobile areas without a licensed abortion provider, and will leave only two remaining licensed abortion clinics in Alabama:  one in Huntsville and one in Tuscaloosa.

40.     If the staff privileges requirement takes effect, women in Montgomery, Birmingham, and all points south would be forced to travel at least 100 miles, and some more than 200 miles – and most women must make that trip two times (the first for counseling and then a second visit, at least 24 hours later, for the abortion) – to obtain an abortion in the state.

41.     Alabama does not require other similarly situated health care providers to have staff privileges at a local hospital.  The regulations that govern physicians who provide outpatient procedures in their offices, including those that use general anesthesia, do not require them to have admitting privileges.  Ala. Admin. Code r. 540-X-10-.01 *et seq*.  Nor are

ambulatory surgery centers, in which more complicated and riskier procedures are regularly performed, required to have them for their physicians.  *Id.* r. 420-5-2-.01 *et seq.*

C.   **Irreparable Injury**

42.   Plaintiffs and their patients will suffer irreparable harm from the violation of their constitutional rights if the staff privileges requirement goes into effect.  The staff privileges requirement will force both Plaintiffs to cease to provide abortion as of July 1, 2013.

43.   RHS will be forced to close, causing Plaintiff Ayers to lose her business of more than thirty years.  PPSE will be forced to cut back on staff and hours, and will be unable to provide a critical service, causing them to lose patients and patient trust.  Plaintiffs have no adequate remedy at law.

44.   The staff privileges requirement will jeopardize women's health, shutting down three-fifths of the clinics that provide abortions without medical justification, and severely limiting the availability of abortions in the state.

45.   In some cases, women will be unable to obtain abortions altogether because of the loss of abortion services.  For other women, the additional travel required to the remaining licensed providers in Tuscaloosa or Huntsville will increase the costs and delay the abortion. Although abortion is one of the safest surgical procedures, the risk of complications (as well as the cost of the procedure) increases as the pregnancy advances.  Given that the majority of Plaintiffs' patients are low-income, the increased costs alone will make it impossible for some women to obtain an abortion.

46.   The staff privileges requirement will, therefore, irreparably harm Plaintiffs' patients in two ways: threatening the health of women seeking abortions, and depriving women of their constitutionally protected right to obtain a pre-viability abortion.

## CLAIMS FOR RELIEF

### COUNT I
**(Plaintiffs' Right to Due Process)**

47.     The allegations of paragraphs 1 through 46 are incorporated as though fully set forth herein.

48.     The staff privileges requirement of HB 57 violates the rights of Plaintiffs to due process under the Fourteenth Amendment to the U.S. Constitution.  The staff privileges requirement makes Plaintiffs' clinic licenses contingent on their physicians' obtaining staff privileges at local hospitals, and thereby unconstitutionally delegates standardless and unreviewable licensing authority to private parties.

### COUNT II
**(Substantive Due Process – Patients' Right to Privacy)**

49.     The allegations of paragraphs 1 through 46 are incorporated as though fully set forth herein.

50.     The staff privileges requirement violates Plaintiffs' patients' right to liberty and privacy as guaranteed by the due process clause of the Fourteenth Amendment to the United States Constitution.  It is an unreasonable health regulation, and it has the unlawful purpose and effect of imposing an undue burden on women's right to choose abortion.

## COUNT III
### (Substantive Due Process)

51.    The allegations of paragraphs 1 through 46 are incorporated as though fully set forth herein.

52.    The staff privileges requirement violates the due process rights of Plaintiffs, their physicians, staff members, and patients by requiring them to comply with the staff privileges requirement, which is not rationally related to any legitimate state interest.

## COUNT IV
### (Equal Protection)

53.    The allegations of paragraphs 1 through 46 are incorporated as though fully set forth herein.

54.    The staff privileges requirement violates equal protection by treating Plaintiffs differently from other similarly situated health care providers without a sufficient state interest.


WHEREFORE, Plaintiffs respectfully request that the Court:

1. declare Section 4(c) of HB 57, to be codified at Ala. Code § 26-23E-4(c), unconstitutional under the Fourteenth Amendment to the United States Constitution;

2. enjoin Defendants, their employees, agents, and successors in office from enforcing Ala. Code § 26-23E-4(c) without bond;

3. award Plaintiffs costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

4. grant Plaintiffs such other, further, and different relief as the Court may deem just and proper.

Date: July 26, 2013

Respectfully submitted,


s/      Carrie Y. Flaxman
Carrie Y. Flaxman*
District of Columbia Bar No. 458681
Planned Parenthood Federation of America
1110 Vermont Avenue, NW, Suite 300
Washington, DC 20005
carrie.flaxman@ppfa.org
(202) 973-4800

Roger Evans*
New York State Bar No. 1797075
Planned Parenthood Federation of America
434 W. 33rd Street
New York, NY 10001
roger.evans@ppfa.org
(212) 541-7800

*Attorneys for Plaintiffs Planned Parenthood
Southeast, Inc., Shaneka Davis, and Kiwana
Brooks*

M. Wayne Sabel
ASB-4249-L74M
Sabel & Sabel, PC
2800 Zelda Road, Suite 100-5
Montgomery, AL 36106
waynesabel@sabellaw.com
(334) 271-2770

*Attorney for Plaintiffs*

Randall C. Marshall
ASB-3023-A56M
ACLU Foundation of Alabama, Inc.
207 Montgomery Street, Suite 910
Montgomery, AL 36104
rmarshall@aclualabama.org
(334) 265-2754

Alexa Kolbi-Molinas*
New York State Bar No. 4477519

14

Andrew Beck*
New York State Bar No. 4740114
American Civil Liberties Foundation
125 Broad Street, 18th Floor
New York, NY 10004
akolbi-molinas@aclu.org
abeck@aclu.org
(212) 549-2633

*Attorneys for Plaintiffs Reproductive Health
Services and June Ayers*


*admitted pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following counsel of record on this day of the 26th of July 2013:

John C. Neiman, Jr.
Andrew L. Brasher
William G. Parker
Laura E. Howell
jneiman@ago.state.al.us

*Counsel for Defendants Strange, Brooks, Falls and Rich*

Patricia E. Ivie
P Brian Hale
pat.ivie@adph.state.al.us
brian.hale@adph.state.al.us

*Counsel for Defendant Williamson*

s/      Carrie Y. Flaxman

# EXHIBIT A

```
1    HB57

2    145710-2

3    By Representative McClurkin

4    RFD: Health

5    First Read: 05-FEB-13

6    PFD: 01/24/2013
```

```
1    145710-2:n:01/24/2013:FC/tj LRS2012-5198R1

2

3

4

5

6

7

8    SYNOPSIS:          Under existing law, no provision of law

9                      expressly provides comprehensive standards of

10                     medical care for abortion or reproductive health

11                     centers.

12                            This bill would provide comprehensive

13                     standards, define terms, express legislative

14                     findings, intent, and declarations.

15                            This bill would require physician

16                     involvement in abortion or reproductive health

17                     centers.

18                            This bill would require certain standards in

19                     nursing care in abortion or reproductive health

20                     centers.

21                            This bill would require patients receive all

22                     professional standards of practice and care.

23                            This bill would require certain procedures

24                     in the administering of follow-up care.

25                            This bill would classify an abortion or

26                     reproductive health center as an ambulatory health
```

1    care occupancy and require certain standards be
2    met.
3         This bill would require the center to report
4    the name of the father of the unborn child to law
5    enforcement in certain circumstances.
6         This bill would require the Board of Health
7    to adopt rules.
8         This bill would provide criminal and civil
9    penalties for failure to comply.
10        Amendment 621 of the Constitution of Alabama
11   of 1901, now appearing as Section 111.05 of the
12   Official Recompilation of the Constitution of
13   Alabama of 1901, as amended, prohibits a general
14   law whose purpose or effect would be to require a
15   new or increased expenditure of local funds from
16   becoming effective with regard to a local
17   governmental entity without enactment by a 2/3 vote
18   unless: it comes within one of a number of
19   specified exceptions; it is approved by the
20   affected entity; or the Legislature appropriates
21   funds, or provides a local source of revenue, to
22   the entity for the purpose.
23        The purpose or effect of this bill would be
24   to require a new or increased expenditure of local
25   funds within the meaning of the amendment. However,
26   the bill does not require approval of a local
27   governmental entity or enactment by a 2/3 vote to

1    become effective because it comes within one of the

2    specified exceptions contained in the amendment.

3

4                              A BILL

5                         TO BE ENTITLED

6                            AN ACT

7

8        To require physician involvement in an abortion

9    performed at an abortion or reproductive health center; to

10   define terms and express legislative intent; to require

11   certain standards in nursing care, post-operative and

12   follow-up care; to require the father's name be reported to

13   law enforcement in certain circumstances; to require the Board

14   of Health to adopt rules and to provide criminal and civil

15   penalties for failure to comply; and in connection therewith

16   would have as its purpose or effect the requirement of a new

17   or increased expenditure of local funds within the meaning of

18   Amendment 621 of the Constitution of Alabama of 1901, now

19   appearing as Section 111.05 of the Official Recompilation of

20   the Constitution of Alabama of 1901, as amended.

21   BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

22       Section 1. This act shall be known and may be cited

23   as the "Women's Health and Safety Act."

24       Section 2. (a) The Legislature finds all of the

25   following:

26       (1) That the percentage of abortion or reproductive

27   health centers that have been subject to adverse licensure

1    action vastly exceeds the percentage of facilities in any

2    other category that have similarly been subject to adverse

3    licensure actions. This alarming level of regulatory

4    non-compliance among abortion and reproductive health centers

5    in Alabama puts abortion patients at unreasonable risk.

6         (2) At abortion or reproductive health centers,

7    patients are often treated in a manner inconsistent with a

8    traditional physician/patient relationship.

9         (3) Abortion or reproductive health centers are not

10   operated in the same manner as ambulatory surgical treatment

11   centers or physician offices.

12        (4) Abortion involves not only a surgical procedure

13   with the usual risks attending surgery, but also involves the

14   taking of human life.

15        (5) Abortion is a highly personal and very sensitive

16   procedure which results in stress and concern for the patient

17   that is unique to the decision to have an abortion.

18        (6) Abortion is a very profitable procedure most

19   often engaged in by stand-alone clinics without many of the

20   safeguards found in a traditional physician/patient

21   relationship or other medical care setting.

22        (7) Because abortion and reproductive health centers

23   do not currently provide the level of personal contact found

24   in many physician/patient relationships and in other medical

25   care settings, it is necessary for the Legislature to mandate

26   the personal presence and participation of the physician in

27   the process.

1      (8) Moreover, because abortion or reproductive

2   health centers have often failed to meet acceptable standards

3   of medical care, it is necessary for Legislature to enact

4   reasonable and medically appropriate health and safety

5   standards for all abortion and reproductive health centers,

6   and to provide effective enforcement mechanisms and

7   disincentives for centers that are unable or unwilling to meet

8   these requirements.

9      Section 3. As used in this act, the following terms

10  shall have the following meanings:

11     (1) ABORTION. The use or prescription of any

12  instrument, medicine, drug, or any other substance or device

13  with the intent to terminate the pregnancy of a woman known to

14  be pregnant with knowledge that the termination by those means

15  will with reasonable likelihood cause the death of the unborn

16  child. Such use or prescription is not an abortion if done

17  with the intent to save the life or preserve the health of an

18  unborn child, remove a dead unborn child, or to deliver the

19  unborn child prematurely in order to preserve the health of

20  both the mother (pregnant woman) and her unborn child. The

21  term "abortion" as used in these rules, does not include a

22  procedure or act to terminate the pregnancy of a woman with an

23  ectopic pregnancy, nor does it include the procedure or act to

24  terminate the pregnancy of a woman when the unborn child has a

25  lethal anomaly. For the purposes of this act, a "lethal

26  anomaly" means that the child would die at birth or be still

27  born. For the purposes of this act, the term, "ectopic

1    pregnancy," means any pregnancy resulting from a fertilized
2    egg that has implanted or attached outside the uterus. The
3    term, "ectopic pregnancy," also includes a pregnancy resulting
4    from a fertilized egg implanted inside the cornu of the
5    uterus.

6         (2) ABORTION INDUCING DRUG. A medicine, drug, or any
7    other substance prescribed or dispensed with the intent of
8    terminating the clinically diagnosable pregnancy of a woman,
9    with the knowledge that the termination will with reasonable
10   likelihood cause the death of the unborn child. Use of such
11   drugs to induce abortion is also known as "medical abortion."
12   This includes off-label use of drugs known to have
13   abortion-inducing properties, which are prescribed
14   specifically with the intent of causing an abortion, such as
15   misoprostol (Cytotec), and methotrexate. This definition does
16   not apply to drugs that may be known to cause an abortion, but
17   which are prescribed for other medical indications, such as
18   chemotherapeutic agents and diagnostic drugs.

19        (3) ABORTION OR REPRODUCTIVE HEALTH CENTER. A
20   facility defined and regulated as an abortion or reproductive
21   health center by the rules of the Alabama State Board of
22   Health.

23        (4) ADMINISTER. To give or apply a pharmacologic or
24   other therapeutic agent to a patient.

25        (5) DISPENSE. To sell, distribute, administer, leave
26   with, give away, dispose of, deliver, or supply a drug or
27   medicine to the ultimate user or the user's agent.

1          (6) PHYSICIAN. A person currently licensed by the

2    Medical Licensure Commission, State of Alabama, to practice

3    medicine or osteopathy pursuant to Section 34-24-50, et seq.,

4    Code of Alabama 1975.

5          (7) PRESCRIPTION. A physician's order for the

6    preparation and administration of a drug or device for a

7    patient.

8          (8) REGISTERED PROFESSIONAL NURSE (RN). A person

9    currently licensed in the State of Alabama pursuant to Section

10    34-21-21, Code of Alabama 1975.

11          Section 4. (a) Only a physician may perform an

12    abortion.

13          (b) During and after an abortion procedure performed

14    at an abortion or reproductive health center, a physician must

15    remain on the premises until all patients are discharged. The

16    discharge order must be signed by the physician. Prior to

17    discharge from the facility, the patient shall be provided

18    with the name and telephone number of the physician who will

19    provide care in the event of complications.

20          (c) Every physician referenced in this section shall

21    have staff privileges at an acute care hospital within the

22    same standard metropolitan statistical area as the facility is

23    located that permit him or her to perform dilation and

24    curettage, laparotomy procedures, hysterectomy, and any other

25    procedures reasonably necessary to treat abortion-related

26    complications.

1       Section 5. At all times during procedures in an
2       abortion or reproductive health center, nursing care shall be
3       under the supervision of a registered professional nurse
4       currently licensed in Alabama. At least one registered
5       professional nurse shall be on duty to provide or supervise
6       all nursing care of patients in preparation for and during the
7       abortion procedure, during the recovery period, and through
8       the initial discharge by the attending physician. Other
9       nursing service personnel shall remain on duty as required to
10      meet the needs of each patient.

11       Section 6. All patient care in an abortion or
12      reproductive health center must be rendered in accordance with
13      all applicable federal, state, and local laws, State Board of
14      Health rules, State Board of Medical Examiners rules, and
15      current standards of care, including all professional
16      standards of practice.

17       Section 7. Only a physician may give, sell,
18      dispense, administer, or otherwise prescribe an
19      abortion-inducing drug. Because the failure and complications
20      from medical abortion increase with advancing gestational age,
21      because the physical symptoms of medical abortion can be
22      identical to the symptoms of ectopic pregnancy, and because
23      abortion-inducing drugs do not treat ectopic pregnancies but
24      rather are contraindicated in ectopic pregnancies, the
25      physician giving, selling, dispensing, administering, or
26      otherwise providing or prescribing the abortion-inducing drug
27      must first examine the pregnant woman in person and document,

1    in the woman's medical chart, the gestational age and

2    intrauterine location of the pregnancy prior to giving,

3    selling, dispensing, administering, or otherwise providing or

4    prescribing the abortion-inducing drug.

5           Section 8. Physicians performing abortion procedures

6    in abortion or reproductive health centers shall conform to

7    the rules for office-based surgery of the Alabama State Board

8    of Medical Examiners, shall meet the standards prescribed in

9    the rules for "office-based procedures - moderate

10   sedation/analgesia," and shall meet all other requirements in

11   those rules, including the recommended guidelines for

12   follow-up care, requirements for recovery area, assessment for

13   discharge, reporting requirements, and registration

14   requirements.

15          Section 9. An abortion or reproductive health center

16   shall be classified as ambulatory health care occupancy and

17   shall meet all standards in the NFPA 101 Life Safety Code 2000

18   edition, or such standards in any later edition of the NFPA

19   101 Life Safety Code that the Board of Health may adopt for

20   facilities classified as ambulatory health care occupancy. Not

21   later than 180 days after the effective date of this act, each

22   licensed abortion or reproductive health center shall submit

23   to the Department of Public Health architectural drawings and

24   plans and sprinkler system plans and such other materials as

25   may be required to show compliance or prospective compliance

26   with the applicable life safety code. These shall be submitted

27   and reviewed pursuant to the Board of Health Rules for Plan

1    Review, including the payment of plan review fees. Not later

2    than 12 months after the effective date of this act, each

3    abortion or reproductive health center shall obtain from the

4    Department of Public Health a certificate of completion which

5    shall certify that the facility meets all ambulatory health

6    care occupancy standards in the applicable NFPA 101 Life

7    Safety Code, as well as all other life safety and building

8    standards required by law or rule. Any facility that fails to

9    submit architectural drawings and plans, sprinkler system

10   plans, and such other materials as may be required to the

11   Department of Public Health within the deadline for such

12   submission shall have its license revoked. Any facility that

13   fails to obtain a certificate of occupancy within the deadline

14   for obtaining such certificate shall have its license revoked.

15          Section 10. (a) Any minor child under the age of 16

16   seeking an abortion from an abortion or reproductive health

17   care facility shall be asked by the physician performing the

18   abortion or his or her agent to state the name and age of the

19   individual who is believed to be the father of the unborn

20   child. While the minor child may refuse to provide the

21   father's name and age, she should be encouraged to do so by

22   the physician or agent consistent with the physician's legal

23   obligation to reduce the incidence of child abuse when there

24   is reason to suspect that it has occurred.

25          (b) In addition to any other abuse reporting

26   requirements that may apply to the staff of an abortion or

27   reproductive health center, if the reported age of the father

1     is two or more years greater than the age of the minor child,

2     the facility shall report the names of the pregnant minor

3     child and the father to both local law enforcement and the

4     county department of human resources. If the pregnant minor

5     child is less than 14 years old, the name of the minor child

6     shall be reported to the Department of Human Resources,

7     regardless of whether the father is two or more years older

8     than the minor child. The receipt of reportable information by

9     any member of a facility staff shall trigger the requirement

10    for the facility to report such information. Nothing in this

11    section shall be construed to constructively repeal any other

12    provisions of law requiring parental consent before an

13    abortion procedure is performed.

14         Section 11. The Board of Health shall publish

15    amended rules for abortion and reproductive health care

16    centers that are consistent with this act within 180 days

17    after the effective date of this act. Such rules shall take

18    effect within the time frame required by the Alabama

19    Administrative Procedure Act.

20         Section 12. (a) Any person other than a physician

21    who performs or attempts to perform an abortion, including the

22    prescription, dispensing, or administration of abortion-

23    inducing drug, shall be guilty of a Class C felony.

24         (b) Any person who prescribes, dispenses, or

25    administers an abortion-inducing drug without first examining

26    the patient in person shall be guilty of a Class C felony.

1    (c) The administrator of an abortion or reproductive

2    health center who knowingly and willfully permits the facility

3    to be operated in a manner that violates Section 4, Section 5,

4    Section 6, or Section 7 of this act shall be guilty of a Class

5    C felony.

6    (d) The administrator of an abortion or reproductive

7    health center who knowingly and willfully violates Section

8    10(b) of this act shall be guilty of a Class A misdemeanor.

9    Section 13. Any person who can demonstrate personal

10   injury, including physical injury, emotional distress, or

11   mental anguish, where such injury has resulted from the

12   failure of an abortion or reproductive health center to

13   conform to the requirements of this act, may maintain a civil

14   action for damages against the abortion or reproductive health

15   center and against the administrator of the facility.

16   Section 14. (a) The failure of any physician, nurse

17   practitioner, physician assistant, registered professional

18   nurse, or licensed practical nurse to conform to the

19   requirements of this act or any rule or regulation adopted

20   under provision of this act may be grounds for adverse

21   licensure action, up to and including license revocation.

22   (b) Any abortion or reproductive health center that

23   is found to have provided an abortion, in a manner that

24   violates this act or any rule or regulation adopted under the

25   provision of this act, may be subject to adverse licensure

26   action, up to and including license revocation.

1        Section 15. Upon application by the Department of
2    Public Health, a circuit court or any judge thereof shall have
3    jurisdiction for cause shown, to grant a temporary restraining
4    order, a preliminary injunction, a permanent injunction, or
5    any combination of those remedies, restraining and enjoining
6    any person from violating the provisions of this act and any
7    rules promulgated thereunder. Any temporary restraining order,
8    preliminary injunction, or permanent injunction shall be
9    issued without bond. This remedy is in addition to any other
10   remedies available to the Department of Public Health.

11       Section 16. (a) Nothing in this act shall be
12   construed as creating or recognizing a right to abortion.

13       (b) It is not the intention of this act to make
14   lawful an abortion that is currently unlawful.

15       (c) The provisions of this act shall be construed in
16   pari materia with other statutes governing abortions.

17       (d) Nothing in this act shall be construed to
18   modify, supersede, or constructively repeal any provisions of
19   the Alabama Medical Liability Act of 1987, the Alabama Medical
20   Liability Act of 1996, or any amendments thereto.

21       Section 17. The Alabama Legislature, by joint
22   resolution, may appoint one or more of its members to
23   intervene as a matter of right in any case in which the
24   constitutionality of this act or any portion thereof is
25   challenged.

26       Section 18. Any provision of this act held to be
27   invalid or unenforceable by its terms, or as applied to any

1    person or circumstance, shall be construed so as to give it

2    the maximum effect permitted by law, unless such holding shall

3    be one of utter invalidity or unenforceability, in which event

4    such provision shall be deemed severable herefrom and shall

5    not affect the remainder hereof or the application of such

6    provision to other persons not similarly situated or to other,

7    dissimilar circumstances.

8            Section 19. Although this bill would have as its

9    purpose or effect the requirement of a new or increased

10    expenditure of local funds, the bill is excluded from further

11    requirements and application under Amendment 621, now

12    appearing as Section 111.05 of the Official Recompilation of

13    the Constitution of Alabama of 1901, as amended, because the

14    bill defines a new crime or amends the definition of an

15    existing crime.

16            Section 20. This act shall become effective on the

17    first day of the third month following its passage and

18    approval by the Governor, or its otherwise becoming law.