IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| PLANNED PARENTHOOD SOUTHEAST, INC., et al., <br><br> *Plaintiffs,* <br><br> v. <br><br> LUTHER STRANGE, in his official capacity as Attorney General of the State of Alabama, et al., <br><br> *Defendants.* | CIVIL ACTION NO. <br> 2:13-cv-405-MHT-TFM |

### DECLARATION OF DONALD E. WILLIAMSON, M.D.

Donald E. Williamson, M.D., declares and states the following:

1. My name is Donald E. Williamson, M.D. I am a resident of Montgomery County, Alabama, and I am over 19 years of age.

2. I serve as State Health Officer for the State of Alabama. By virtue of this position, I am the chief executive officer of the Alabama Department of Public Health (ADPH).

3. I have had the opportunity to review Plaintiffs' Memorandum in Support of Motion for Summary Judgment filed on December 16, 2013, particularly those portions making arguments reciting deposition testimony provided by me on October 23, 2013. Plaintiffs rely upon selective and limited portions of my testimony to provide an inaccurate characterization of ADPH's position concerning H.B. 57's staff privileges mandate. The following is offered for clarification of ADPH's position on this matter.

4. Plaintiffs' memorandum states that ADPH's existing administrative rules do not include a staff privileges requirement. Doc. 109 at 6. Plaintiffs also suggest that it is conceded by me that "there is no public health rationale for imposing a staff privileges

requirement on abortion clinics," Doc. 109 at 1, and claim that ADPH has determined that a staff privileges requirement is "inessential to patient safety and public health." Doc. 109 at 6. These assertions are not accurate. ADPH rules place considerable emphasis on <u>requiring</u> abortion or reproductive health centers to ensure the availability of a physician on staff or in the local community with local hospital staff privileges to care for patients who experience abortion complications, twenty-four hours a day, seven days a week. The ADPH rules include the following requirements:

- The abortion or reproductive health center physician who performs an abortion is accountable for ensuring adequate follow-up care for each patient. To ensure the continuity of that care, the center physician must contact and communicate with any outside physician rendering care for a patient's abortion complications, as soon as the center physician learns of the existence of such complications. Rule 420-5-1-.03(1), *Ala. Admin. Code*.

- Each abortion or reproductive health center must have available to its patients, a physician with admitting privileges at a local hospital to provide care for complications arising from an abortion twenty-four hours a day, seven days a week. If no physician at the abortion center can meet this requirement, then the center must enter a written contract with an outside physician who has local hospital privileges that will permit that physician to perform dilation and curettage, laparotomy procedures, hysterectomy, and any other procedures necessary to treat abortion-related complications. The contract with the outside physician must require him or her to agree to be available to treat and manage all complications for the center's patients that may reasonably arise as a result of abortion. Rule 420-5-1-.03(6)(b), *Ala. Admin. Code.*

2

- When the physician with local hospital admitting privileges (whether it is a center physician, an outside physician or a substitute physician meeting all the requirements) is not available to treat and manage complications for the center's abortion patients, the abortion or reproductive health center must actually cease performing abortions 72 hours in advance of the physician's unavailability. Rule 420-5-1-.03(6)(c), *Ala. Admin. Code.*

Contrary to the assertion by Plaintiffs in their memorandum, ADPH <u>does</u> impose a hospital staff privileges requirement, and <u>does</u> regard the availability of a physician with local hospital staff privileges as essential to protecting the patients of abortion or reproductive health centers. ADPH rules require that if an outside physician is utilized that the physician has local hospital privileges that will permit the physician to perform dilation and curettage, laparotomy procedures, hysterectomy, and any other procedures necessary to treat abortion-related complications, to ensure that the outside covering physician is capable of performing procedures necessary to treat abortion-related complications. The hospital staff privileges requirement is deemed so important by ADPH that its rules do not permit abortion or reproductive health centers to perform abortions when the physician with privileges is not available. While ADPH has found its current rules to be valuable in protecting the patients of Alabama's abortion or reproductive health centers, it recognizes that the Alabama Legislature has exercised its lawful authority in matters of public health by legislating that a greater degree of protection be provided through a statutory mandate that all abortion or reproductive health center physicians have local hospital privileges. ADPH stands ready to implement this mandate should it be permitted by this Court to do so.

5.  Plaintiffs' memorandum also cites to portions of my deposition testimony regarding ADPH regulation of ambulatory surgery centers (ASCs) and end stage renal

3

dialysis centers (ESRDs). Doc. 109 at 7-8. I respectfully offer the following to clarify certain aspects of ADPH's regulation of health care facilities and why there are legitimate differences in requirements imposed on different types of facilities. While ADPH has the responsibility of enforcing state licensure rules for ASCs and ESRDs, it also has the responsibility, through a contract with the federal Centers for Medicare and Medicaid Services (CMS), to enforce federal regulations governing care and treatment in ASCs and ESRDs because those facilities participate in Medicare and Medicaid reimbursement programs. CMS regulations for ASCs and ESRDs and its directives to state agencies such as ADPH with regard to inspection and enforcement on behalf of CMS, are extensive and ADPH generally relies more heavily upon the federal process and regulations to ensure that patient care is adequate in ASCs and ESRDs, than it does upon its state licensing authority. On the other hand, ADPH regulates abortion or reproductive health centers solely under its state licensing authority. In the case of ASCs and ESRDs, it has been ADPH's experience that the requirements imposed by CMS regulations have successfully addressed patient care. With respect to its sole regulation of abortion or reproductive health centers, ADPH determined that a staff privileges requirement was necessary to properly address patient care deficiencies found through its inspections and investigations.

  6. Plaintiffs assert in their memorandum that it is "rare" for an abortion patient to experience a complication requiring a visit to an emergency room or to be admitted to the hospital for treatment for abortion complications. Doc. 109 at 11-12. Plaintiffs further assert that "staff privileges would be irrelevant to the care of the rare abortion patient who needs hospital care." Doc. 109 at 16. Many rules governing health care facilities are designed to prevent adverse outcomes from events that rarely occur but that can cause serious harm when they do. For example, residential health care facilities (such as nursing homes and assisted living facilities) must comply with extensive (and sometimes expensive)

4

requirements for fire prevention, suppression and alarm systems. Fire in a nursing home or an assisted living facility may be a "rare" event, but no knowledgeable person seriously argues that these measures should not be required to minimize the likelihood of a fire and to protect against grievous harm when a fire does occur. It is not accurate to suggest that a requirement is unimportant or irrelevant because the event it is designed to address "rarely" occurs. ADPH has determined that requiring abortion centers to have a physician with hospital privileges who is available to treat patients with abortion complications is an important protection, and is certainly not irrelevant.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on January 7th, 2014, in Montgomery, Alabama.

_____
Donald E. Williamson, M.D.