UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| PLANNED PARENTHOOD SOUTHEAST, INC., on behalf of its patients, physicians, and staff, *et al.*,<br><br>          Plaintiffs,<br><br>v.<br><br>LUTHER STRANGE, in his official capacity as Attorney General of the State of Alabama, *et al.*,<br><br>          Defendants. | CIVIL ACTION<br><br>Case No. 2:13-CV-405-MHT |

**PLAINTIFFS' SUPPLEMENTAL TRIAL BRIEF**

On May 21, 2014, this Court asked the parties to submit additional briefing on whether it is appropriate for the Court to consider the availability of abortion in other states when assessing whether the Alabama admitting privileges law violates the Constitution. As courts have made clear in various constitutional contexts, including when assessing abortion restrictions, the answer is that this Court cannot. Indeed, a State cannot absolve itself of its constitutional duties by pointing to an individual's ability to exercise his or her constitutional rights in another State. To hold otherwise would undermine the fundamental nature of the Constitution, which operates as a "limitation on state power." *Plyler v. Doe*, 457 U.S. 202, 213 (1982). The Constitution, including the Fourteenth Amendment, "was designed to afford its protection to all within the boundaries of a State." *Id.* at 212. If a State could simply point to the ability to exercise a constitutional right in another State when accused of violating the Constitution, that State would be allowed to shirk its basic constitutional duties.

1

As the Supreme Court has repeatedly explained, this is not the law.  For example, in *Missouri ex rel. Gaines v. Canada*, 305 U.S. 337 (1938), the Court held that a State's refusal to admit African-American students to a state law school cannot be justified by pointing to the presence of law schools in adjacent states.  In that case, the State argued that the ability to attend an out-of-state law school, with a state-funded scholarship, alleviated any constitutional burden.  The Court flatly rejected the argument, calling it "beside the point."  *Id.* at 349.  Instead, the Court explained that the relevant inquiry is whether Missouri met its constitutional obligations within its own borders:

> That obligation is imposed by the Constitution upon the States severally as governmental entities—each responsible for its own laws establishing the rights and duties of persons within its borders.  It is an obligation the burden of which cannot be cast by one State upon another, and no State can be excused from performance by what another State may do or fail to do.

*Id*. at 350.

The Court reached the same conclusion in *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61 (1981).  In that case, the Court rejected the argument that a zoning ordinance that prohibited live entertainment in the borough limits was permissible because live entertainment was "amply available in close-by areas."  As the Court held, one "'is not to have the exercise of his liberty of expression in appropriate places abridged on the plea that it may be exercised in some other place.'"  *Id*. at 76-77 (quoting *Schneider v. State*, 308 U.S. 147, 163 (1939)); *see also id*. at 78 (Blackmun, J., concurring) ("a local community should [not] be free to eliminate a particular form of expression so long as that form is available in areas reasonably nearby"); *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 556 (1975) (holding that a city violated the First Amendment by prohibiting the musical "Hair" from being performed in the city's auditorium,

and that the availability of a private theater to hold the production could not ameliorate the constitutional violation).

The lower courts have uniformly recognized, and applied, this principle. For example, the Fifth Circuit rejected the argument that a city's denial of a zoning permit to a mosque did not impermissibly burden the mosque members' free exercise rights because the members could simply establish a mosque outside the city limits. *Islamic Ctr. of Miss., Inc. v. City of Starkville*, 840 F.2d 293, 298-99 (5th Cir. 1988). As the court explained in terms that are equally applicable here, "a city may not escape the constitutional protection afforded against its actions by protesting that those who seek an activity it forbids may find it elsewhere." *Id*. at 299; *see also McCurry v. Tesch*, 738 F.2d 271, 275 (8th Cir. 1984) (holding that a State could not restrict the times and days that a church could hold religious services based on the argument that "the plaintiffs would be free to congregate and worship elsewhere").

The Seventh Circuit reached a similar conclusion in *Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011). In that case, the city prohibited firing ranges within the city limits, while at the same time required fire-range training as a condition of gun ownership. *Id*. at 689-90. The court held that the presence of firing ranges outside the city limits did not relieve the city of its Second Amendment obligations: "It's hard to imagine anyone suggesting that Chicago may prohibit the exercise of a free-speech or religious-liberty right within its borders on the rationale that those rights may be freely enjoyed in the suburbs." *Id*. at 697; *see also Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 938-39 (N.D. Ill. 2014) (holding that "the fact that Chicagoans may travel outside the City to acquire a firearm does not bear on the validity" of the city's ban on in-city gun acquisition even though "some living on the outskirts of the City might very well currently live closer to gun stores now").

The same principles apply with equal force to a State's constitutional obligation in the context of the fundamental right to abortion. The core principal of *Roe v. Wade*, 410 U.S. 113 (1973), and its progeny, is that the Constitution limits the State's power to restrict access to abortion. If a State is allowed to point to the availability of abortion in another State to relieve itself of its constitutional obligation, the result would be a "patchwork system where constitutional rights are available in some states but not others," and this would "nullify over twenty years of post-*Casey* precedents because states could survive the undue-burden test by merely saying that abortions are available elsewhere." *Jackson Women's Health Org. v. Currier*, 940 F. Supp. 2d 416, 422 (S.D. Miss. 2013); *see also Jackson Women's Health Org. v. Amy*, 330 F. Supp. 2d 820, 827 (S.D. Miss. 2004) (holding that an abortion restriction's burden is not "adequately ameliorated by the possible availability of abortions in surrounding states"); *P.L.S. Partners, Women's Med. Ctr. of R.I., Inc. v. City of Cranston*, 696 F. Supp. 788, 796 (D.R.I. 1988) (rejecting argument that abortion restriction was permissible because of availability of abortion elsewhere because "[c]onstitutional guarantees are not to be found on a map, isolated geographically, honored there, ignored here"); *W. Side Women's Servs., Inc. v. City of Cleveland*, 573 F. Supp. 504, 518 (N.D. Ohio 1983) (same, noting that if that were the rule of law, it would be permissible to "overlook housing discrimination in one area of the city on the theory that minorities may freely live in other parts of that city") (citing *Buchanan v. Warley*, 245 U.S. 60 (1917)).

In fact, counsel is "unaware of any case in which one state may deprive someone of a constitutional right because the individual could exercise it in another state." *Isaacson v. Horne*, 716 F.3d 1213, 1234 (9th Cir. 2013) (Kleinfeld, J., concurring) (concurring in decision to strike down ban on later abortions, and noting that the court's holding was appropriate even if a woman

4

could travel to another state for the procedure).  Indeed, if a State's infringement on the right to abortion could be ameliorated by the availability of unrestricted services in other states, numerous cases would have been, at the very least, analyzed differently.  For example, in *Planned Parenthood v. Casey*, the Supreme Court struck down a Pennsylvania statute that required married women to notify their husbands before seeking an abortion in large part because of the burden such a law would pose on survivors of domestic violence.  505 U.S. 833, 887-99 (1992).  Nowhere in the Court's opinion does the Court look to the availability of abortions without spousal notice in neighboring states.

 This is for good reason.  If the availability of abortions in other states were relevant to the constitutional analysis, a restriction's constitutionality would fluctuate depending on whether (and when) neighboring states adopted similar restrictions.  Indeed, acceptance of Defendants' argument would lead to a bizarre jurisprudence in which the first state (State A) to adopt a restriction may have the restriction upheld because of the availability of abortions in neighboring State B.  But if State B then passes an identical restriction it might be struck down precisely because the law in State A was upheld.

 Moreover, importantly, if Alabama could shirk its constitutional duties by pointing to the availability of abortion in Florida or Georgia, what happens when one of those states adopts a law restricting the availability of abortions?  Unfortunately, this scenario is far from hypothetical.  Texas's admitting privileges law has been allowed to take effect with devastating consequences.  *See Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, No. 13-51008, 2014 WL 1257965 (5th Cir. Mar. 27, 2014) (petition for rehearing en banc filed April 10, 2014); Editorial, *Real Goal of Abortion 'Limits': Bans*, N.Y. Times (May 10, 2014), *available at* http://www.nytimes.com/2014/05/11/opinion/sunday/real-goal-of-abortion-limits-

bans.html?_r=0 . Mississippi's admitting privilege law, which would entirely eliminate abortion care in that state, is on appeal. *Jackson Women's Health Org. v. Currier*, No. 13-CV-60599 (5th Cir. argued Apr. 28, 2014). The Louisiana legislature just passed an admitting privileges law that will severely restrict access in that state. H.B. 388 (La. 2014); Jeremy Alford and Erik Ekholm, *With New Bill, Abortion Limits Spread in South*, N.Y. Times (May 21, 2014), *available at* http://www.nytimes.com/2014/05/22/us/politics/new-bill-spreads-abortion-limits-in-south.html?ref=us&_r=0. And both houses of the Oklahoma legislature have passed a similar bill that would also diminish abortion access in that state. *Id.*; S.B. 1848 (Okla. 2014). This domino effect is yet another reason why courts have not looked beyond a State's border when assessing constitutional claims. *See Illinois Ass'n of Firearms Retailers*, 961 F. Supp. 2d at 939 (recognizing that "if all cities and municipalities can prohibit gun sales and transfers within their borders, then all gun sales and transfers may be banned across a wide swath of the county").

For all of these reasons, this Court should limit its inquiry to the admitting privileges law's effect within Alabama's borders.

Dated: May 23, 2014

Respectfully submitted,

/s/ Randall C. Marshall

Randall C. Marshall
ASB-3023-A56M
ACLU Foundation of Alabama, Inc.
900 S. Perry St., Suite B
Montgomery, AL 36104
rmarshall@aclualabama.org
(334) 265-2754

Alexa Kolbi-Molinas*

6

    New York State Bar No. 4477519
    Andrew Beck*
    New York State Bar No. 4740114
    Susan Talcott Camp*
    New York State Bar No. 2688703
    Julia Kaye*
    New York State Bar No. 5189733
    American Civil Liberties Union Foundation
    125 Broad Street, 18th Floor
    New York, NY 10004
    akolbi-molinas@aclu.org
    abeck@aclu.org
    tcamp@aclu.org
    jkaye@aclu.org
    (212) 549-2633

    Dyanne M. Griffith*
    District of Columbia Bar No. 100918
    Wilmer Cutler Pickering Hale & Dorr LLP
    1875 Pennsylvania Avenue NW
    Washington, DC 20006
    Dyanne.Giffith@wilmerhale.com
    (202) 663-6411

    *Attorneys for Plaintiffs Reproductive Health Services and June Ayers*

    Jennifer Sandman*
    New York State Bar No. 458681
    Roger Evans*
    New York State Bar No. 1797075
    Maithreyi Ratakonda*
    New York State Bar No. 179707
    Planned Parenthood Federation of America
    434 W. 33rd Street
    New York, NY 10001
    jennifer.sandman@ppfa.org
    roger.evans@ppfa.org
    mai.ratakonda@ppfa.org
    (212) 541-7800

    *Attorneys for Plaintiff Planned Parenthood Southeast, Inc., Kiwana Brooks, and Barbara Buchanan*

    M. Wayne Sabel

ASB-4249-L74M
Sabel & Sabel, PC
2800 Zelda Road, Suite 100-5
Montgomery, AL 36106
waynesabel@sabellaw.com

*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that service of Plaintiffs' Supplemental Trial Brief will be perfected upon the following counsel of record via ECF filing on this 23rd day of May, 2014:

Andrew L. Brasher
James W. Davis
William G. Parker
Laura E. Howell
Kyle A. Beckman
abrasher@ago.state.al.us
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36130

*Counsel for Defendants Strange, Brooks, Falls and Rich*

Patricia E. Ivie
P Brian Hale
pat.ivie@adph.state.al.us
brian.hale@adph.state.al.us
Alabama Department of Public Health
P.O. Box 303017
Montgomery, AL 36130

*Counsel for Defendants Williamson*

Randall C. Marshall