## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| PLANNED PARENTHOOD SOUTHEAST, INC., et al., | ) ) ) | |
| *Plaintiffs,* | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 2:13-cv-405-MHT-TFM |
| LUTHER STRANGE, in his official capacity as Attorney General of the State of Alabama; et al., | ) ) ) ) | |
| *Defendants.* | ) ) | |

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' BRIEF REGARDING ANDERSON AND HAYES

The Defendants file this response to the Plaintiffs' motion regarding the expert opinions of Dr. James Anderson and Jeffrey Hayes.

### I.    Plaintiffs' motion is largely irrelevant.

As an initial matter, the Plaintiffs' motion is largely irrelevant because they have moved to exclude expert opinions that establish facts which are not reasonably subject to dispute. These facts are either subject to judicial notice or established by other witnesses as well as these expert witnesses.

First, the Plaintiffs contend that Dr. Anderson's supplemental expert report should be excluded because it relies on (1) a National Abortion Federation website that recommended that abortion doctors be able to admit patients at a local hospital, and (2) information provided to Dr. Anderson by the Texas Attorney

General's Office that one of the plaintiff-doctors in the Texas litigation had told the court that he achieved staff privileges. These were recent developments and discoveries at the time of Dr. Anderson's supplemental report. But both of these facts are now matters of public record that the Court can and should judicially notice. Fed.R.Evid. 201. S*ee* Exhibit A (publically available filings from the Texas litigation); *Planned Parenthood of Greater Texas Surgical Health Services v. Abbott*, --- F.3d ----, 2014 WL 1257965 (5th Cir. 2014) (citing in support of its opinion "the recommendation from the National Abortion Foundation that abortion patients searching for a doctor should find one who "[i]n the case of an emergency" can "admit patients to a nearby hospital (no more than 20 minutes away").

Second, the Plaintiffs say that Jeffrey Hayes, the President of the Alabama Association of Ambulatory Surgery Centers ("AASC"), who has worked in ambulatory surgery centers in Alabama for decades and is the president of an industry association in the field, cannot testify that it is common practice for Alabama surgery centers to require their doctors to have staff privileges at a local hospital and that effectively all surgery centers do so. This fact was undisputed at summary judgment and is also established by the testimony of other witnesses. The Plaintiffs' own witness, Dr. Fine, testified that doctors performing procedures at ambulatory surgery centers "[g]enerally" have admitting privileges at local hospitals. Exh. B at 93–94. Dr. Williamson, the state regulator of these centers, testified that ASC physicians generally have privileges during his deposition, which is in evidence. Dr. Anderson testified that the ASC where he works requires

privileges, and the corporate representative from Baptist Hospital testified that the ASCs that operate under the Baptist umbrella require privileges.   While Jeffrey Hayes is undoubtedly qualified to proffer this opinion, his testimony is simply extra evidence of an uncontroversial proposition.

## II.   Dr. Anderson is qualified to offer opinions based on his knowledge and experience.

The Plaintiffs are wrong to dispute Dr. Anderson's qualifications or the reliability of his opinions.   Dr. Anderson has 35 years of experience in the medical field, and he has been an emergency room physician for over 25 of those years.   Def. Exh. 3 at 23.   He is board certified in family practice and emergency medicine, and he has received certifications in advanced trauma life support and advanced cardiac life support.   Def. Exh. 3 at 25.   During the course of his practice, Dr. Anderson has seen an estimated 150,000 patients.   Doc. 215-1 at 63–64 (Trans. of Anderson Trial Testimony).   He has obtained and renewed admitting privileges at six or eight hospitals in Virginia, as well as at army hospitals in Texas, Germany, Iraq, and Afghanistan.   *Id.* at 25–26.

As someone who has obtained privileges and renewed his credentials at multiple hospitals over the years, Dr. Anderson is qualified by experience and knowledge to speak about obtaining those credentials.   *See* Fed.R.Evid. 702.   He testified that he was required to "get letters of recommendation," recount his "continuing education," demonstrate his "technical skills" and prove that he was "technically proficient," and show his "board status" and "recertification."   Doc. 215-

1 at 26.   The hospital's credentialing board then considered his application or renewal request and called other physicians about his application.   *Id.*   As a licensed medical professional, credentialed at hospitals, Dr. Anderson has the requisite knowledge and experience to discuss the credentialing process from a physician's perspective.   *See id.*; Def. Exh. 3 ¶ 14.

To the extent that the Plaintiffs challenge Dr. Anderson's qualifications to offer testimony about the credentialing process generally, and whether hospitals accommodate competent physicians who cannot meet minimum admissions and similar requirements, they are wrong to do so.   The same arguments are equally applicable to Dr. Roe's testimony about her belief that she is unable to obtain privileges at an Alabama hospital and that such privileges are unnecessary for her and other itinerant abortion doctors.   Although, like Dr. Anderson, Dr. Roe has had privileges at a limited number of hospitals, she has not served on a credentialing committee.   *See* Doc. 215 at 10. Yet the Plaintiffs called her to testify as an expert, and she proffered the opinion that she could not meet the requirements for obtaining admitting privileges and that to try would be detrimental to her career. Exh. C at 23–51 (Trans. of Roe Trial Testimony).  If Dr. Roe is qualified to testify that applying for privileges would be a detriment to her career because of a reporting database, then Dr. Anderson is qualified as an expert to explain why her fears are unwarranted.

Finally, Plaintiffs are making too much of the involvement of Vincent Rue in this ligation.  Vincent Rue is a litigation consultant[1] who was hired by the State to assist the attorneys in this litigation by, for example, advising the lawyers about experts to hire, coordinating depositions and meetings, and assisting testifying experts with word-processing, drafting, and technological issues.  Practicing medical doctors generally do not have access to their own staff to assist with these functions and, of course, an expert report drafted for use during the course of litigation is not something that medical doctors routinely prepare in the ordinary course of their work.  That is why, for example, the Plaintiffs' expert Dr. Roe relied on the Plaintiffs' lawyers to draft the document disclosing her expert opinions under Rule 26(a)(2).  *See* Exh. D (Trans. of Dr. Roe Deposition Testimony) at 63-64 ("Q. Okay. Did the lawyers write that or did you?  A. The lawyers wrote that.").  Like the lawyers in a case, litigation consultants assist with investigative and administrative matters without testifying, and their activities are not discoverable. *See, e.g.,* Fed.R.Civ.P. 26(b)(3) (no discovery of "things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent"); Fed.R.Civ.P. 26(b)(4)(C) & (D) (specific protection against discovery for draft expert reports and consulting experts); *United States v. Noble*, 422 U.S. 225, 238–39 (1975) (explaining that the work product doctrine "protect[s] material prepared by agents

---

[1] "Litigation consulting is a service attorneys use when they are working on a large or complicated case. Lawyers are experts on practicing law, but their expertise doesn't extend to technical issues. … A consultant can also help the attorney find people who can act as expert witnesses in the cases they are working on." WiseGeek.com, *What is litigation consulting?*, http://www.wisegeek.com/what-is-litigation-consulting.htm (last visited June 3, 2014).

for the attorney as well as those prepared by the attorney himself" because "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial"); *In re Cendant Corp. Securities Litigation*, 343 F.3d 658 (3d Cir. 2003) (protecting from discovery the advice of a litigation consultant "retained to aid in witness preparation").

Rue's involvement in this litigation is no different than the involvement of the attorneys or the attorneys' in-house paralegal staff.  Dr. Anderson testified multiple times that his opinions are his own, based on his extensive experience as a physician.  *E.g.*, Doc. 215-1 at 70–71.  A litigation consultant's administrative assistance (or a lawyer's assistance, for that matter) in preparing an expert's supplemental report in compliance with Rule 26(a)(2) does not invalidate or call into question the expert opinions reflected in that report.  The defendants have offered Dr. Anderson's testimony in this case, not any litigation consultant's.

### III.    Hayes is qualified based on his knowledge and experience.

Jeffrey Hayes is qualified to discuss the common practices of ambulatory surgery centers.  He is president of the Alabama Association of Ambulatory Surgery Centers.  Doc. 193-2 (Jeffrey Hayes Depo.) at 11.  Hayes has received continuing training and education in his field through his company.  *Id.* at 28.  He has been the administrator of an ambulatory surgery center since 1997, *id.* at 35, and he has been a member of the AASC since that time, *id.* at 53.  The ambulatory surgery center where he works requires its physicians to have admitting privileges at a local

hospital. *Id.* at 41. As an administrator, Hayes has been responsible for ensuring compliance with accreditation standards and applicable regulations. *Id.* at 63–65.

Hayes opinions are also reliable. Hayes has worked in the ambulatory surgery field since 1991 and is familiar with industry practices as a result. *Id.* at 74; *see SR Intern. Business Ins. Co. v. World Trade Center Properties, LLC*, 467 F.3d 107, 132–33 (2d Cir. 2006) (holding that a witness was qualified as an expert to testify about insurance industry practices because he had over 30 years of experience in that industry and was familiar with those practices). From this experience, he has observed that most ambulatory surgery center doctors have admitting privileges at local hospitals. Doc. 193-2 at 74–75. Although Hayes testified that he conducted an informal poll of other members of the AASC to confirm this opinion, the poll responses merely confirmed his preexisting knowledge of common practices in the industry. *Id.* at 75. From his experience, Hayes knows that centers require physicians to have hospital privileges as a credentialing matter. *Id.* at 76, 107. Indeed, accrediting agencies require physicians at ambulatory surgery centers to have admitting privileges or a transfer agreement with a local hospital. *Id.* at 76–77, 85–86. And based on his years of experience and interactions with other centers and their physicians, Hayes explained that the centers require their doctors to have privileges as a common practice, regardless of whether the law or an accrediting agency also imposes the requirement. *Id.* at 81, 93–94, 107.

In addition, the Plaintiffs' objections to Hayes's testimony are inconsistent with their decision to have their own administrators testify about common practices in the abortion industry.  Unlike the Plaintiffs' administrators, Hayes's experience with the ambulatory surgery center industry comes not only from his decades of experience managing ambulatory surgery centers but also from his leadership roles in a industry trade association.  As a result, he is as qualified to speak about common industry practices as anyone could be.

## Conclusion

For the foregoing reasons, the Court should deny the Plaintiffs' request to strike the testimony of Dr. Anderson and Hayes.

Respectfully submitted,

*s/ Andrew L. Brasher*
Andrew L. Brasher
   *Ala. Solicitor General*
Margaret L. Fleming
James W. Davis
Kyle A. Beckman
Laura E. Howell
   *Asst. Ala. Attorneys General*
**Counsel for Defendants**
 **Strange, Bailey, Falls, and Rich**

OFFICE OF THE ALABAMA
  ATTORNEY GENERAL
501 Washington Avenue
Montgomery, AL 36130
(334) 242-7300
abrasher@ago.state.al.us
mfleming@ago.state.al.us
jimdavis@ago.state.al.us
kbeckman@ago.state.al.us
lhowell@ago.state.al.us

s/ Patricia E. Ivie
Patricia E. Ivie
    *General Counsel*
P. Brian Hale
    *Deputy General Counsel*
**Counsel for Defendant Williamson**

ALABAMA DEPARTMENT
  OF PUBLIC HEALTH
P.O. Box 30317
Montgomery, AL 36130
(334) 206-5209
pat.ivie@adph.state.al.us
brian.hale@adph.state.al.us

## CERTIFICATE OF SERVICE

I hereby certify that I served the following counsel of record by electronic mail on this 4th day of June, 2014:

Jennifer R. Sandman
Maithreyi Ratakonda
PLANNED PARENTHOOD FEDERATION OF
AMERICA
1100 Vermont Ave., NW, Suite 300
Washington, D.C. 20005
jennifer.sandman@ppfa.org
julia.kaye@ppfa.org

Randall C. Marshall
ACLU FOUNDATION OF ALABAMA, INC.
207 Montgomery Street, Suite 910
Montgomery, AL 36104
rmarshall@aclualabama.org

Alexa Kolbi-Molinas
Andrew David Beck
Jennifer Dalven
Renee Paradis
Susan Talcott Camp
Julia Kaye
AMERICAN CIVIL LIBERTIES UNION
125 Board Street, 18th Floor
New York, NY 10004
akolbi-molinas@aclu.org
abeck@aclu.org
jdalven@aclu.org

Dyanne M. Griffith
Lesley R. Fredin
Malgorzata Spangenberg
Emily Lowry Stark
Skye L. Perryman
WILMER CUTLER PICKERING HALE &
DORR LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
dyanne.griffith@wilmerhale.com
lesley.fredin@wilmerhale.com
gosia.spangenberg@wilmerhale.com

rparadis@aclu.org                          emily.stark@wilmerhale.com
tcamp@aclu.org                             skye.perryman@wilmerhale.com
jkaye@aclu.org

Roger Kraus Evans                          M. Wayne Sabel
PLANNED PARENTHOOD FEDERATION OF           SABEL & SABEL, P. C.
AMERICA                                    2800 Zelda Road, Suite 100-5
434 W. 33rd Street                         Montgomery, AL 36106
New York, NY 10001                         mwsabl@mindspring.com
roger.evans@ppfa.org


                                           */s Andrew L. Brasher*
                                           OF COUNSEL